UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

KIMBERLY JEANLOUIS,

    *Plaintiff,*                           **CASE NO.:**

v.

PAWS 2 HELP INC.,

    *Defendant.*
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff files this Complaint and Demand for Jury Trial against Defendant Paws 2 Help Inc. as follows:

**INTRODUCTION**

1. Plaintiff seeks damages from her employer, Defendant, for violations of Title VII of the Civil Rights Act of 1964 ("**Title VII**") and the Florida Civil Rights Act of 1992 ("**FCRA**") arising from discrimination on the basis of her gender, including sexual harassment and sexual assault, as well as for Defendant's negligent supervision of the peer who intentionally touched her in an unwanted sexual nature.

**PARTIES**

2. Plaintiff is a resident of Palm Beach County, Florida. At all times material, she was an employee of Defendant at its location in West Palm Beach, Florida. 42 U.S.C. § 2003e(f).

3. Defendant is Florida not-for-profit corporation with its principal location in Palm Beach County, Florida. Defendant is a high-volume veterinary clinic with locations in West Palm Beach and Jupiter, Florida. It has approximately 30 employees. At all times material, Defendant was Plaintiff's employer. 42 U.S.C. § 2000e(b); Fla. Stat. § 760.02(6).

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under Title VII.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims because such claims are so closely related to her Title VII claims that they form part of the same case or controversy. 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant because Defendant continuously conducts business within this District.

7. Venue is proper because Defendant is subject to personal jurisdiction in this District and the acts complained of and giving rise to the claims occurred in this District. 28 U.S.C. § 1391.

**CONDITIONS PRECEDENT**

8. Plaintiff satisfied all conditions precedent to bring this lawsuit. She dual filed a charge of discrimination with the EEOC and Florida Commission on Human Relations on February 14, 2025. This timely suit comes within 90 days of her right to sue from the EEOC.

**GENERAL ALLEGATIONS**

9. Plaintiff joined Defendant in October 2020 as a veterinary technician.

10. She has never been written up and has been an exemplary employee for more than five years.

11. While balancing school and work, Plaintiff has been a team player, picking up shifts and stepping into a role in the surgical unit when needed.

A. **The Conduct of Dr. Mark South**

12. During Plaintiff's tenure, Defendant's primary veterinary surgeon at its West Palm Beach location has been Dr. Mark South ("**Dr. South**").

13. As all of Defendant's management and staff are aware, Dr. South is prone to frequent emotional outburst (directed primarily at women, including Plaintiff).

14. He also espouses sexist and derogatory comments in the workplace, including during surgery (again, directed primarily at women, including Plaintiff).

15. Among other things that Dr. South has said to Plaintiff:

   a. The way to "find a fat woman's wet spot" you "roll her in flour";

   b. That women, including Plaintiff, are "just for making babies";

   c. That women, including Plaintiff, "belong in the kitchen"; and

   d. That women, including Plaintiff, need "an allowance" from their male partners.

16. When these and many, many other similar comments were made, Plaintiff would push back.

17. Dr. South made these (and many, many similar) comments in front of numerous other female veterinary technicians.

18. Plaintiff discussed these comments with her female peers, who, like Plaintiff, expressed shock and disgust at his conduct.

19. On multiple occasions, Plaintiff reported this to Defendant's general manager, Carol Smith ("**GM Smith**") and Defendant's Board Director and President Mary Contessa ("**Pres. Contessa**").

20. For example, in January 2023, Plaintiff emailed GM Smith and Pres. Contessa regarding Dr. South's behavior, including explicitly talking about his sexist and derogatory remarks and Dr. South's reaction upon being confronted and his reply that it was "just business."

21. Defendant took no corrective action.

22. On May 1, 2023, Plaintiff sent a similar email, again pointing out Dr. South's inappropriate behavior (and that Dr. South, since her initial email, frequently refused to even acknowledge her). She asked to be shifted to floor roles and described the ways that Dr. South's behavior was impacting her.

23. Again, Defendant took no corrective action.

24. As an example of Dr. South's unchecked eruptions at female staffers, on July 5, 2024 he exploded on Plaintiff during a surgery, repeatedly calling her "stupid" and, when she asked him to stop the name calling, screamed at her to "get [her] head out of [her] ass." Earlier that day, Plaintiff had put her own dog down. This incident was witnessed by numerous employees.

25. Plaintiff again reported this to GM Smith and Pres. Contessa, who failed to take appropriate corrective action.

26. After multiple complaints and crying to GM Smith, Plaintiff was allowed to work one day on the floor.

**B.  The Conduct of Dr. Evan Blair**

27. On May 22, 2024 Dr. Evan Blair ("**Dr. Blair**") screamed at Plaintiff and threatened her job during a shift. At the time, he was Defendant's Medical Director.

28. Plaintiff reported Dr. Blair's conduct to Pres. Contessa and GM Smith.

29. Plaintiff met with Pres. Contessa to discuss the incident on May 24, 2024. Plaintiff asked Pres. Contessa to make Dr. Blair apologize. Pres. Contessa's responded that, "Men don't apologize."

30. The result of leaving this behavior unchecked is that it worsened. Like Dr. South, Dr. Blair (like Dr. South) prone to outbursts. He also routinely described his sexual preferences

4

(regarding his partners' preferred age and race) in explicit detail to Plaintiff (as well as other female staffers).

31. In one instance, Dr. Blair referred to a bottle of baby oil and stated that he was "going to use it later", plainly in reference to sexual acts.

32. Plaintiff again reported this to GM Smith and Pres. Contessa. Nothing happened.

C. **Plaintiff is Sexually Assaulted on September 7, 2024 by a Peer**

33. On September 7, 2024, Plaintiff's peer, Jonathan Albuquerque ("**Mr. Albuquerque**"), sexually assaulted Plaintiff in the surgery wing.

34. Plaintiff entered the surgery wing to provide ultrasound papers to Dr. South.

35. Mr. Albuquerque was standing next to Dr. South, who was seated.

36. As Plaintiff exited the surgery wing, Mr. Albuquerque grabbed and manipulated one of Plaintiff's breasts with his left hand.

37. Plaintiff reached out and pushed on Mr. Albuquerque's pectoral muscle.

38. She then lifted her right hand up. Mr. Albuquerque grabbed her right wrist with his left hand and placed his right hand firmly on her left shoulder. He turned Plaintiff and walked her out of the surgery wing.

39. This entire exchange occurred within approximately two feet of Dr. South, who did nothing to intervene.

40. When confronted by Plaintiff about what he had done, Mr. Albuquerque stated that his "intrusive thoughts told [him] to do it."

41. When Mr. Albuquerque reentered the surgery wing, he laughed to Dr. South about what had happened.

42. Plaintiff immediately reported the incident to GM Smith.

43. GM Smith's advice was that Plaintiff should "be careful of others' reputations."

44. On September 11, 2024, she sent management an email outlining her concerns and asked to see security footage.

45. On October 7, 2024, Plaintiff met with GM Smith, who showed what appeared to be doctored video "clips" of the incident. Specifically, she was not shown the footage of Mr. Albuquerque grabbing her breast.

46. Plaintiff asked what the next step in the investigation was. GM Smith coldly told her that she could "Look for it in an email."

47. From then forward, GM Smith was rude and hostile when Plaintiff followed up asking what the next steps would be.

48. Mr. Albuquerque is a long-time employee of Defendant and frequently interacts with GM Smith outside of the workplace.

49. Despite Defendant possessing video footage of the assault and Dr. South sitting immediately next to it as it unfolded), Mr. Albuquerque was not punished or reprimanded in anyway. It is unknown if Defendant even bothered to undertake an investigation. Mr. Albuquerque was not transferred to Defendant's sister clinic in Jupiter, Florida. He was not scheduled on shifts other than when Plaintiff worked. He was not placed on leave during any investigation into his conduct.

50. Plaintiff has been required to continue working in close proximity with Mr. Albuquerque.

51. After her transfer back to the main floor, Mr. Albuquerque asked to transfer out of the surgery room (i.e., back onto the main floor and in near-constant close proximity to Plaintiff).

52. Management granted the request despite being fully aware of his inappropriate behavior, including his sexual touching of Plaintiff.

53. Since that time, Plaintiff has been required to work in close proximity to Mr. Albuquerque on nearly every shift that she has worked.

54. Mr. Albuquerque has continued to touch female co-workers, including on their hips and hugging them from behind. He justifies this, in part, by taking the position that physical contact, such as hugging or kissing on the cheek are common in Defendant's workplace. Before and after September 7, 2024, Defendant's management was or should have been aware of his proclivity to inappropriately touch female employes in the workplace.

55. Since that time, the hostility in the workplace has continued. And Plaintiff has been singled out. For example, while other employees are allowed to make up shifts if they leave early or need a day off, Defendant's management does not allow Plaintiff the same options.

56. Management also routinely refuses to acknowledge her or speak to her while she works.

## COUNT I
## NEGLIGENT SUPERVISION

57. Plaintiff repeats and realleges Paragraphs 1-56 as if fully set forth herein.

58. Plaintiff was assaulted and battered by a co-worker on Defendant's premises which included physical impacts on Plaintiff's person.

59. While this conduct occurred on Defendant's premises and time, the sexually charged abuse occurred outside the scope of her co-worker's employment.

60. Defendant was aware of Mr. Albuquerque's intentional, inappropriate and unwanted sexual touching of Plaintiff but did not take adequate measures to prevent such misconduct from recurring in the workplace.

61. Defendant owed a duty to Plaintiff to use reasonable care in the supervision of Mr. Albuquerque. This is particularly true because Defendant has been repeatedly apprised of Mr. Albuquerque's workplace misconduct—often by witnessing it firsthand.

62. Defendant was aware of Mr. Albuquerque's proclivity for inappropriately touching female employees.

63. The inappropriate sexual touching of Plaintiff occurred after Defendant was on notice of same.

64. Defendant breached duties to Plaintiff when it failed to take reasonable actions such as disciplining, training, overseeing, or otherwise protecting Plaintiff from Mr. Albuquerque's sexual harassment, assault, and battery. Defendant failed to supervise Mr. Albuquerque enough to prevent (or even decrease the likelihood of) future incidents such as the one Plaintiff was subjected to.

65. As a direct and proximate result of Defendant's breaches of supervision duties, Plaintiff suffered substantial injuries and damages in an amount to be determined at trial.

66. Defendant was grossly negligent because its behavior entailed a conscious disregard and indifference to Plaintiff's safety and rights. Defendant engaged in intentional misconduct because it had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Plaintiff would result. Despite that knowledge, Defendant intentionally pursued its course of conduct resulting in injuries and damages to Plaintiff. Consequently, Plaintiff is entitled to and seeks punitive damages.

## COUNT II
## VIOLATION OF TITLE VII (HOSTILE WORK ENVIRONMENT)

67. Plaintiff realleges and incorporates by reference paragraphs 1-56. as if fully set forth herein.

68. Title VII prohibits Defendant from discriminating against Plaintiff in the terms and conditions of her employment because of her sex.

69. Plaintiff's harassment was allowed because she is a female. But for that status, Plaintiff would have been treated differently by Defendant leading up to and after the reporting of her superiors' and peer's misconduct.

70. Plaintiff did not welcome the offensive acts and statements of Dr. Blair, Dr. South, or Mr. Albuquerque. Their conduct (and Defendant's failure to address or correct it) was severe and pervasive to a degree that it materially altered the terms or conditions of Plaintiff's employment.

71. Among other factors demonstrating that Defendant's work environment had become hostile to Plaintiff, the following occurred:

   a. Plaintiff's peer, in plain view of Defendant's surgeon, grabbed Plaintiff's breast;

   b. Plaintiff's superiors (a former medical director of Defendant and a current surgeon for Defendant) routinely made inappropriate sexual comments to and about Plaintiff and other female staff;

   c. Plaintiff's superiors (a former medical director of Defendant and a current surgeon for Defendant) routinely engaged in angry outbursts against Plaintiff, something which was exacerbated after she reported their conduct; and

   d. Plaintiff was required to work alongside the man who grabbed her breast, who was not disciplined in any way after her complaint.

72. Defendant's management in human resources roles—GM Smith and Pres. Contessa were aware of or directly involved in each of the instances described above. But Defendant,

through them and otherwise, failed to take corrective action against the conduct Plaintiff complained of (and which was easily corroborated).

72. A reasonable person would have found that the offensive acts and statements materially altered the terms or conditions of Plaintiff's employment—and Plaintiff believed that such conduct has materially altered the terms or conditions of her employment.

74. Defendant, through its management and board member(s), knew, or in the exercise of reasonable care, should have known, about the hostile work environment.

75. And yet, Defendant failed to take prompt remedial action to eliminate the hostile work environment.

76. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management with decision-making capabilities (via Plaintiff's direct superior and otherwise) knowingly countenanced or approved of the discrimination against Plaintiff.

77. Plaintiff suffered damages as a result of Defendant's hostile work environment in an amount to be determined at trial.

## COUNT III
## VIOLATION OF FCRA (HOSTILE WORK ENVIRONMENT)

78. Plaintiff realleges and incorporates by reference paragraphs 1-56. as if fully set forth herein.

79. The FCRA prohibits Defendant from discriminating against Plaintiff in the terms and conditions of her employment because of her sex.

80. Plaintiff's harassment was allowed because she is a female. But for that status, Plaintiff would have been treated differently by Defendant leading up to and after the reporting of her superiors' and peer's misconduct.

81. Plaintiff did not welcome the offensive acts and statements of Dr. Blair, Dr. South, or Mr. Albuquerque. Their conduct (and Defendant's failure to address or correct it) was severe and pervasive to a degree that it materially altered the terms or conditions of Plaintiff's employment.

82. Among other factors demonstrating that Defendants' work environment had become hostile to Plaintiff, the following occurred:

   a. Plaintiff's peer, in plain view of Defendant's surgeon, grabbed Plaintiff's breast;

   b. Plaintiff's superiors (a former medical director of Defendant and a current surgeon for Defendant) routinely made inappropriate sexual comments to and about Plaintiff and other female staff;

   c. Plaintiff's superiors (a former medical director of Defendant and a current surgeon for Defendant) routinely engaged in angry outbursts against Plaintiff, something which was exacerbated after she reported their conduct; and

   d. Plaintiff was required to work alongside the man who grabbed her breast, who was not disciplined in any way after her complaint.

83. Defendant's management in human resources roles—GM Smith and Pres. Contessa were aware of or directly involved in each of the instances described above.  But Defendant, through them or otherwise, failed to take corrective action against the conduct Plaintiff complained of (and which was easily corroborated)

84. A reasonable person would have found that the offensive acts and statements materially altered the terms or conditions of Plaintiff's employment—and Plaintiff believed that such conduct has materially altered the terms or conditions of her employment.

85. Defendant, through its management and board member(s), knew, or in the exercise of reasonable care, should have known, about the hostile work environment.

86. And yet, Defendant failed to take prompt remedial action to eliminate the hostile work environment.

87. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management with decision-making capabilities (via Plaintiff's direct superior and otherwise) knowingly countenanced or approved of the discrimination against Plaintiff.

88. Plaintiff suffered damages as a result of Defendant's hostile work environment in an amount to be determined at trial.

## COUNT IV
## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

89. Plaintiff repeats and realleges Paragraphs 1-56 as if fully set forth herein.

90. Plaintiff is female. Her gender is a protected class as defined by Title VII.

91. But for that status, Plaintiff would have been treated differently by Defendant.

92. Defendant treated similarly situated employees outside of Plaintiff's protected class more favorably than Plaintiff was treated.

93. Defendant, through its agents with decision-making authority over Plaintiff's employment, took adverse employment actions against Plaintiff when among other things, they failed to address her numerous complaints pertaining to male superiors and the inappropriate sexual touching by a male peer.

94. Further, after reporting discrimination and improper conduct in the workplace, Plaintiff was ignored by management and her mistreatment continued unabated and even worsened.

95. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management with decision-making capabilities (via Plaintiff's direct superior and otherwise) knowingly countenanced or approved of the discrimination against Plaintiff.

96. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, in an amount to be determined at trial.

## COUNT V
## GENDER DISCRIMINATION IN VIOLATION OF THE FCRA

97. Plaintiff repeats and realleges Paragraphs 1-56 as if fully set forth herein.

98. Plaintiff is female. Her gender is a protected class as defined by Title VII.

99. But for that status, Plaintiff would have been treated differently by Defendant.

100. Defendant treated similarly situated employees outside of Plaintiff's protected class more favorably than Plaintiff was treated.

101. Defendant, through its agents with decision-making authority over Plaintiff's employment, took adverse employment actions against Plaintiff when among other things, they failed to address her numerous complaints pertaining to male superiors and the inappropriate sexual touching by a male peer.

102. Further, after reporting discrimination and improper conduct in the workplace, Plaintiff was ignored by management and her mistreatment continued unabated and even worsened.

103. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management with decision-making capabilities (via Plaintiff's direct superior and otherwise) knowingly countenanced or approved of the discrimination against Plaintiff.

104. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, in an amount to be determined at trial.

## COUNT VI
## RETALIATION IN VIOLATION OF TITLE VII (GENDER)

105.   Plaintiff repeats and realleges Paragraphs 1-56 as if fully set forth herein.

106.   Plaintiff is woman. Her gender is a protected class as defined by Title VII.

107.   But for that status, Plaintiff would have been treated differently by Defendant.

108.   Plaintiff's reporting of Defendant's discriminatory treatment constitutes protected activity within the meaning of Title VII.

109.   Defendant took adverse employment actions against Plaintiff when, among other things, after reporting workplace misconduct, Plaintiff was reprimanded, her complaints ignored, her treatment by superiors and management worsened, and she was forced to continue to work under Dr. South who began isolating and ostracizing her.

110.   Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management with decision-making capabilities (via managers, and board members) knowingly countenanced or approved of the retaliation against Plaintiff for engaging in protected activity.

111.   As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, in an amount to be determined at trial.

## COUNT VII
## RETALIATION IN VIOLATION OF THE FCRA (GENDER)

112.   Plaintiff repeats and realleges Paragraphs 1-56 as if fully set forth herein.

113.   Plaintiff is woman. Her gender is a protected class as defined by the FCRA.

114.   But for that status, Plaintiff would have been treated differently by Defendant.

115. Plaintiff's reporting of Defendant's discriminatory treatment constitutes protected activity within the meaning of the FCRA.

116. Defendant took adverse employment actions against Plaintiff when, among other things, after reporting workplace misconduct, Plaintiff was reprimanded, her complaints ignored, her treatment by superiors and management worsened, and she was forced to continue to work under Dr. South who began isolating and ostracizing her.

117. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management with decision-making capabilities (via GM Smith, Pres. Contessa, and otherwise) knowingly countenanced or approved of the retaliation against Plaintiff for engaging in protected activity.

118. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

119. Plaintiff respectfully requests the Court enter judgment in her favor as follows:

    a. Backpay resulting from Defendant's violation of Title VII to the fullest extent permitted by law;

    b. Compensatory and punitive damages resulting from Defendant's violations of Title VII to the fullest extent permitted by law;

    c. Backpay resulting from Defendant's violation of the FCRA to the fullest extent permitted by law;

    d. Compensatory and punitive damages resulting from Defendant's violations of the FCRA to the fullest extent permitted by law;

    e. Compensatory and punitive damages resulting from Defendant's negligent supervision to the fullest extent permitted by law;

    f. Pre-judgment and post-judgment interest;

15

    g. An award of costs and reasonable attorneys' fees; and

    h. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: November 5, 2025

Respectfully submitted,

By: */s/ Christopher S. Prater*
    Christopher S. Prater
    Florida Bar No.: 105488
    cprater@pollardllc.com

    Jonathan E. Pollard
    Florida Bar No.: 83613
    jpollard@pollardllc.com

    **Pollard PLLC**
    401 E. Las Olas Blvd., #1400
    Fort Lauderdale, FL 33301
    Telephone: 954-332-2380
    Facsimile: 866-594-5731
    *Attorneys for Plaintiff*